IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | |
|---|---|
| MILTON BROWN<br>21212 Denit Estates Road<br>Brookeville, MD 20833<br><br>Plaintiffs<br><br>v.<br><br>NVR, INC.<br>11700 Plaza America Drive<br>Reston, VA 20190 - 4751<br><br>Serve On:<br><br>Paul Saville<br>President and CEO<br>11700 Plaza America Drive<br>Reston, VA 20190 - 4751<br><br>-and-<br><br>NVR MORTGAGE FINANCE, INC.<br>7601 Lewinsville Road, Ste. 300<br>McLean, VA 22102<br><br>Serve On:<br><br>CSC-Lawyers Incorporating Service Co.<br>7 St. Paul Street, Suite 1660<br>Baltimore, MD 21202<br><br>-and-<br><br>DYNAMIC CAPITAL MORTGAGE, INC.<br>1371 Beacon Street<br>Brookline, MA 02446<br><br>Serve On:<br><br>William O'Niel<br>13631 Glenhurst Road<br>North Potomac, MD 20878 | Case No. 328589V<br><br>FILED ON: 3/22/10 |

[Filing stamp: Case: 328589 / NEW CASE / CV CLERK FEE- 88.88 / MD LEGAL SERV 25.88 / TOTAL 185.88 / Mar 15, 2010]

[Clerk's Office filing stamp: LORETTA E. KNIGHT, CLERK'S OFFICE, MONTGOMERY CO. MD]

**EXHIBIT A**

```
    -and-                             )
                                      )
EMC MORTGAGE                          )
800 State Highway 121 Bypass          )
Lewisville, TX 75067                  )
                                      )
Serve On:                             )
                                      )
The Corporation Trust Incorporated    )
300 E Lombard Street                  )
Baltimore, MD 21202                   )
```

## COMPLAINT

Plaintiff Milton Brown files the following Complaint alleging claims of fraud, negligence, violations of Maryland's consumer protection laws, and violations of Maryland's Commercial Code against NVR, Inc., NVR Mortgage Finance, Inc., Dynamic Capital Mortgage, and EMC:

## PARTIES

1. Plaintiff Milton Brown ("Brown") is the owner of the property located at 21212 Denit Estates Road, Brookeville, MD (the "Property").

2. Defendant NVR Mortgage Finance, Inc. is a mortgage company that brokered the mortgage on Plaintiff's Property with Dynamic Capital Mortgage, Inc. ("Dynamic").

3. Defendant NV Homes was the builder Plaintiff's home.

4. Defendants NV Homes and NVR Mortgage are wholly-owned subsidiaries of NVR, Inc.

5. Defendant EMC Mortgage purchased Brown's mortgage from Dynamic Capital.

6. On May 26, 2006, Plaintiff executed a contract with "NVR Inc. t/a NV Homes" for the construction of a home within the Brookeville Preserve (the "Sales Contract").

7       The contract price was $1,635,840, and the Contract required Plaintiff to make an earnest money deposit of $45,000 upon the execution of the agreement, and a second payment of $118,500 by July 2, 2006. Plaintiff made both of these payments, making $1,472,340 due at closing.

8       The Contract provides that in the event Plaintiff financed the mortgage on the Property through an entity other than NVR Mortgage Finance, Inc., the sales price would increase from $1,635,840 to $1,728,990.

9       At or about the time the Sales Contract was executed, Plaintiff obtained a commitment from NVR Mortgage Finance to finance the mortgage on the Property. The commitment was for a 5/6 10 year, Interest Only Note. The commitment was not contingent on Plaintiff selling the home where he resided at the time in Charlottesville, Virginia.

10      Prior to obtaining this commitment, Plaintiff explained to NVR Mortgage Finance, Inc. that he needed a mortgage that would be approximately $10,000 per month, and NVR Mortgage represented that his monthly mortgage would be in that range.

11      During the course of construction, Plaintiff agreed to changes that increased the contract price from $1,635,840 to $1,704,265.

12      As a result of the change orders, Brown's deposit increased to $170,427. Plaintiff made all of the necessary deposits. The change orders indicated that all of this deposit was refundable.

13      In March 2007, Plaintiff was preparing to close on the mortgage on the Property. Shortly before the scheduled closing, NVR/NVR Mortgage told Brown that the terms of the proposed mortgage had changed and he would have to pay another $100,000 to NVR prior to closing, but was given no explanation as to what had changed.

14      Brown then met with NVR and NVR Mortgage personnel and during this meeting it was explained that NVR and NVR Mortgage had worked things out where he would be able to obtain financing and not have to pay the additional $100,000. However, it was also stated to Brown that he could not seek to obtain his own financing otherwise the price of the Property would increase to $2.8 million.

15      On March 15, 2007, Brown executed a document prepared by NVR Mortgage that represented that (1) the original mortgage commitment of NVR Mortgage had been contingent on Brown selling his Charlottesville home, which had not yet occurred. As a result, NVR Mortgage was refusing to abide by its earlier commitment; (2) Brown's deposit would be forfeited if he was unable to obtain alternative financing; and (3) Brown was authorizing NVR Mortgage to obtain alternative financing.

16      On March 15, 2007, Brown completed a loan application with NVR Mortgage for a first mortgage of $1,316,283. The assets and liability section of the loan application reflects Brown's $2,272.00 per month mortgage on his Charlottesville home.

17      Simultaneously, Brown completed an application for a second mortgage of $438,761.

18      On March 16, 2007, NVR Mortgage completed a second loan application on Brown's behalf. However, NVR Mortgage omitted Brown's mortgage payments on his Charlottesville home from the Assets and Liabilities section of the application.

19      NVR submitted this application to Dynamic Capital, and Dynamic Capital agreed to fund the first and second mortgages.

20      On March 16, 2007, Brown attended the closing on the mortgage for the Property brokered by NVR Mortgage with Dynamic Capital.

21    The purchase price for the Property was identified as $1,755,045, meaning NVR had not eliminated the additional $100,000 in charges, as it had agreed. This purchase price greatly exceeded what it should have been.

22    At closing, for the first time, Brown received Good Faith Estimates ("GFEs") of the closing costs on the proposed mortgages for the first and second notes.

23    The terms of the two Notes brokered by NVR Mortgage and funded by Dynamic Capital were as follows: (1) first mortgage in the amount of $1,316,283 with an interest rate of 7.750 on a 5-year ARM, resulting in monthly payments of principal and interest of $9,430.01; (2) second mortgage in the amount of $438,761 with an interest rate of 11.125 percent, resulting in monthly payments of $4,067.68.

24    According to the GFE for the second mortgage, Brown was paying 7.0 points on the second mortgage of $438,761, or $30,713.27.

25    Also, according to the GFEs, Brown was only being credited with $90,000 in deposits.

26    When Brown objected to the proposed mortgage as well as the overstatement of the purchase price, NVR and NVR Mortgage stated that if he did not close on the financing that NVR Mortgage had brokered and at the increased sales price, he would forfeit his deposit.

27    Rather than forfeit his deposit, Brown closed on the Dynamic Capital mortgage.

### COUNT I
### (Breach of Contract – NVR)

28    Paragraphs 1-27 are realleged and incorporated by reference herein.

29    As a result of the Sales Contract and the resulting Change Orders, the sales price for the contract was $1,704,265.

30    In breach of these agreements, the sales price at closing was $1,755,045.

31      Further, pursuant to the Sales Contract and the Change Orders, Brown should have been credited with over $160,000 in deposits at closing.

32      In breach of these agreements, NVR/NVR Homes only credited Brown with $90,000 at closing.

33      As a result of these breaches, Brown has been damaged.

WHEREFORE, Plaintiff seeks an award of damages against NVR and NVR Homes in an amount to be proven at trial but which is, at a minimum, $150,000.

## COUNT II
(Breach of Contract – NVR/NVR Mortgage Finance)

34      Paragraphs 1-33 are realleged and incorporated by reference herein.

35      NVR Mortgage agreed to finance Brown's mortgage on the Property with a 5/6 10 year, Interest Only Note. NVR Mortgage also represented to Brown that the mortgage would result in him having monthly mortgage payments of approximately $10,000.

36      NVR Mortgage also stated that it would eliminate the additional $100,000 in charges it had initially stated to Brown he would have to pay.

37      NVR Mortgage breached this contract by not providing the agreed to financing and then brokering a mortgage for Brown that resulted in monthly payments of over $14,000, and by failing to eliminate the additional $100,000 in charges.

38      As a result of these breaches, Brown has been damaged.

WHEREFORE, Plaintiff seeks an award of damages against NVR/NVR Mortgage in an amount to be proven at trial but which is, at a minimum, $150,000.

## COUNT III
(Negligent Misrepresentation – NVR/NVR Mortgage Finance)

39      Paragraphs 1-38 are realleged and incorporated by reference herein.

40    NVR/NVR Mortgage represented to Brown that it would finance his mortgage on the Property with a 5/6 10 year, Interest Only Note. NVR Mortgage also represented to Brown that the mortgage would result in him having monthly mortgage payments of approximately $10,000.

41    NVR Mortgage also stated that it would eliminate the additional $100,000 in charges it had initially stated to Brown he would have to pay prior to closing.

42    These statements were false when made.

43    NVR/MVR Mortgage expected Brown to rely on these representations and he did so rely in that he continued under the Sales Contract for the Property.

44    As a result of these misrepresentations, Brown has been damaged.

WHEREFORE, Plaintiff seeks an award of damages against NVR Mortgage in an amount to be proven at trial but which is, at a minimum, $150,000.

## COUNT IV
### (Fraud -- NVR Mortgage)

45    Paragraphs 1-44 are realleged and incorporated by reference herein.

46    During the generation of the loan underlying this case, NVR Mortgage improperly supplied false information to Dynamic Capital by omitting Brown's existing mortgage debt from the Assets and Liabilities section of the loan application.

47    In so doing, NVR Mortgage fraudulently failed to disclose to Brown that this was illegal and that NVR Mortgage's intention was to have Brown approved for a loan for which he would not otherwise qualify.

48    NVR/NVR Mortgage also misstated to Brown that if he did not close on the mortgage brokered by NVR Mortgage with Dynamic Capital, the price of the Property would increase to $2.8 million and he would forfeit his deposits if he did not close.

49      NVR Mortgage also stated that it would eliminate the additional $100,000 in charges it had initially stated to Brown he would have to pay.

50      These statements were false when made.

51      These misrepresentations were made with the expectation that Brown would rely on them, and in fact, Brown did rely on these misrepresentations.

52      As a proximate result of these acts, Plaintiff has been damaged.

WHEREFORE, Plaintiff seeks an award of damages against Defendants in an amount to be proven at trial but which is, at a minimum, $200,000 and punitive damages of $200,000.

## COUNT V
### (Violations of Maryland's Consumer Protection Act)

53      Paragraphs 1-52 are realleged and incorporated by reference herein.

54      Maryland's Consumer Protection Act prohibits unfair and deceptive trade practices, which include failing to state material facts; making false, falsely disparaging, or misleading oral or written statements that have the capacity, tendency, or effect of misleading consumers; and knowingly concealing or omitting material facts with the intent that consumers rely on the same.

55      During the generation of the loan underlying this case, NVR/NVR Mortgage made the following misstatements and/or omissions of material fact: (1) failed to disclose Brown's existing mortgage on his loan application; (2) misstated to Brown that if he did not close on the loan brokered by NVR Mortgage with Dynamic Capital, he would lose his deposit; and (3) if he sought alternative financing other than that obtained through or by NVR Mortgage, the price of the Property would increase to $2.8 million.

56  These misrepresentations were made with the expectation that Brown would rely on them, and in fact, Brown did rely on these omitted material facts to his detriment.

57  As a proximate result of these acts, Plaintiff has been damaged.

WHEREFORE, Plaintiff seeks an award of the following against NVR/NVR Mortgage:

a. Compensatory damages in an amount to be proven at trial, but which are at a minimum, $100,000;

b. Punitive damages in the amount of $200,000;

c. Attorneys' fees and costs;

d. All other relief this Court deems appropriate.

### COUNT VI
(Violations of Maryland Commercial Code, §12-119 – NVR Mortgage)

58  Paragraphs 1-57 are realleged and incorporated by reference herein.

59  Defendant NVR Mortgage failed to provide Brown with a good faith estimate of the closing costs on the loan brokered by NVR Mortgage with Dynamic Capital within 3 days of closing.

60  This failure was a violation of Maryland Commercial Code, §12-119, and Brown has been damaged as a result of these violations.

WHEREFORE, Plaintiff requests the following relief against NVR Mortgage and Dynamic Capital:

a. Compensatory and treble damages in the amount of $100,000;

b. Punitive damages in the amount of $100,000;

c. Attorneys' fees and costs;

d. All other relief this Court deems appropriate.

## COUNT VII
(Violations of Maryland Commercial Code §12-106 – NVR Mortgage)

61      Paragraphs 1-60 are realleged and incorporated by reference herein.

62      As part of the closing on the Dynamic Capital Mortgager, NVR Mortgage drafted and provided Brown with a Truth In Lending Act disclosure.

63      This TIL disclosure understated the finance charges on the first mortgage by $550.00 and understated the Annual Percentage Rate by .005 percent.

64      On information and belief, there were similar errors made in the TIL disclosure on the second Note.

65      As a result of these errors, NVR Mortgage violated Maryland Commercial Code § 12-106, and Brown has been damaged as a result.

WHEREFORE, Plaintiff requests the following relief against NVR Mortgage:

a.  Compensatory and treble damages in the amount of $100,000;

b.  Punitive damages in the amount of $100,000;

c.  Attorneys' fees and costs;

d.      All other relief this Court deems appropriate.

## COUNT VIII
(Rescission – EMC Mortgage)

66      Paragraphs 1-65 are realleged and incorporated by reference herein.

67      As a result of the fraud alleged in Count IV, the violations of the Maryland Consumer Protection Act alleged in Count V, and the violation of Maryland Commercial Code, alleged in Counts VI and VIII, Brown is entitled to rescind the First and Second Mortgages presently held by EMC.

WHEREFORE, Plaintiff requests the following relief against EMC Mortgage:

   a. Rescission of the first and second mortgages on the Property;

   b. Return of all mortgage payments made by Brown and all costs paid at closing by Brown

   c. Attorneys' fees and costs;

   d. All other relief this Court deems appropriate.

Respectfully submitted,

*/s/ Michael P. Coyle*

Michael P. Coyle, Esq.
Richard I. Chaifetz, Esq.
CHAIFETZ & COYLE, PC
9881 Broken Land Parkway, Suite 300
Columbia, MD 21046
443-546-4608 (Tel.)
443-546-4621 (Fax)

Attorneys for Plaintiff

DATED:     March 15, 2010